WETTICK, J.,
The subject matter of this opinion and order of court is the merit of defendants’ contention that a report of a charge nurse is protected from discovery by § 311 of the Medical Care Availability and Reduction of Error (“MCARE”) Act, 40 P.S. § 1303.3 ll.[1]
This is a professional negligence action based on defendants’ alleged failure to timely perform a STAT C-section.
In their complaint, plaintiffs allege that defendant, Datar Singh, M.D., was the on-call “house” attending obstetrician during the evening of December 10, 2011; he was also the only obstetrician present at the hospital; as the house obstetrician, Dr. Singh was required to remain in the hospital throughout his entire shift; and the delay in performing the STAT C-section resulted from Dr. Singh leaving the hospital to have dinner at a restaurant. Plaintiffs further allege that ultimately, contrary to hospital policy, *195 a resident had to perform the STAT C-section with no supervision because the obstetrical team assembled in the operating room could not wait any longer for Dr. Singh.
Jennifer Largent, R.N., was one of the nurses present during the period of time in which Dr. Singh was absent from the hospital. She was deposed on May 7, 2014. In her deposition, she testified that she has worked at West Penn Hospital in the in the Obstetrical Department for about nine and one half years. She has never heard of the house on-call obstetrician leaving the hospital during his or her shift while responsible for patients in the hospital (Largent Depo. at p. 5), and she has never witnessed a resident performing a STAT C-section without the attending physician present (Id).
Nurse Largent was the charge nurse on the evening in question (Id. at p. 9). The charge nurse oversees what is going on on the floor (Id. at p. 11). The charge nurse will get involved in a patient’s care when there is an emergency situation or where help is needed or when nurses ask for help. She has also gotten involved in the care of a patient on her own (Id. at p. 12). As a charge nurse, she is responsible for the other nurses (Largent Depo. at p. 32). She was concerned that Dr. Singh was out of the hospital. She had never heard of anything like this all the years she had been an obstetrical nurse (Id. at pp. 16-17). She remembers looking for Dr. Singh when the patient was in the operating room. She saw him walking toward the OR. However, he was in street clothes, and she testified that you cannot go in the OR with street clothes.
She was present in the OR when the obstetrical team was ready to perform the C-section. She left the room looking for Dr. Singh.
*196 During the same evening, Nurse Largent prepared the incident report that is the subject of this discovery dispute.
Nurse Largent described the preparation of this report at pages 41-43 of her deposition which is attached as Exhibit B to West Penn Allegheny Health System, Inc.’s brief in response to plaintiffs’ motion to compel incident report:
A. I don’t remember if I did, I should say. I —
Q. Well, if you did, you would have written that down, right?
A. Yes.
Q. All right. So based on that, can we agree you probably — you didn’t do anything?
A. Well, I don’t remember if we did do a report that night on that. I don’t remember.
Q. What do you mean do a report on that?
A. We do — I can’t think of what it’s called right now.
MR. MURPHY: I’m going to object if this is peer review.
MS. BELL: Yeah. If this is peer review —
THE WITNESS: No, it — no.
A. Like, when something happens, if a patient falls, there’s a — there is a form that we go in and fill out, and I can’t remember what it’s called right now, but I don’t remember if we did it that night or not. I have to think about that.
Q. And you understand that’s not peer review, to your understanding?
*197 A. No, it is not a peer review.
Q. And do you think something like this where Dr. Singh was out of the hospital would compel you to write a report like that or compel someone to write a report?
MR. MURPHY: Foundation, speculation, opinion, hearsay —
A. Yes.
MR. MURPHY: — relevance.
Q. Yes, that would compel you or someone to write a report?
A. Yes.
Q. And how would that report be written? Hand-written or electronically?
A. Electronically.
Q. And do you know who that gets submitted to?
A. I don’t.
Q. And if you — if a report like that is written out, is there typical — typically some follow-up to that?
A. I would think so. I don’t know.
Q. Have you ever written out a report like that?
A. Yes.
Q. And times when you’ve written a report like that, did you have follow-up from somebody?
A. No.
*198 Q. And if a report was written like that in this circumstance, would it be your responsibility as the charge nurse to do it?
A. It would either be mine or the nurse taking care of the patient.
Q. So either you or Nurse Miller or Nurse Baker?
A. Right.
Q. And I understand you’re having a hard time —
A. It’s called an incident report.
Q. Okay, okay. Do you know if Dr. Singh was with anybody?
A. I don’t know.
Q. Do you know what restaurant Dr. Singh was at?
A. I don’t.
Q. If I said the name Wai Wai, would that — does that refresh your recollection at all?
A. It — well, it’s a restaurant in Bloomfield.
Q. Do you recall whether prior to the delivery you reviewed the fetal heart tracing?
A. Prior to delivery?
Defendants’ contention (which plaintiffs dispute) is that the Largent report was prepared pursuant to § 308(a) of the MCARE Act and is, thus, protected from discoveiy by § 311(a) of this Act. These provisions read as follows:
§ 1303.308. Reporting and notification
*199 (a) Reporting. —A health care worker who reasonably believes that a serious event or incident has occurred shall report the serious event or incident according to the patient safety plan of the medical facility unless the health care worker knows that a report has already been made. The report shall be made immediately or as soon thereafter as reasonably practicable, but in no event later than 24 hours after the occurrence or discovery of a serious event or incident.
(b) Duty to notify patient—Amedical facility through an appropriate designee shall provide written notification to a patient affected by a serious event or, with the consent of the patient, to an available family member or designee within seven days of the occurrence or discovery of a serious event. If the patient is unable to give consent, the notification shall be given to an adult member of the immediate family. If an adult member of the immediate family cannot be identified or located, notification shall be given to the closest adult family member. For unemancipated patients who are under 18 years of age, the parent or guardian shall be notified in accordance with this subsection. The notification requirements of this subsection shall not be subject to the provisions of section 311 (a). Notification under this subsection shall not constitute an acknowledgment or admission of liability. (Footnote omitted).
§ 1303.311. Confidentiality and compliance
(a) Prepared materials. —Any documents, materials or information solely prepared or created for the purpose of compliance with section 310(b) or of reporting under section 304(a)(5) or (b), 306(a)(2) or (3), 307(b) (3), 308(a), 309(4), 310(b)(5) or 313 which arise out of matters reviewed by the patient safety committee *200 pursuant to section 310(b) or the governing board of a medical facility pursuant to section 310(b) are confidential and shall not be discoverable or admissible as evidence in any civil or administrative action or proceeding. Any documents, materials, records or information that would otherwise be available from original sources shall not be construed as immune from discovery or use in any civil or administrative action or proceeding merely because they were presented to the patient safety committee or governing board of a medical facility. (Footnote omitted.)
The confidentiality provisions upon which defendants rely are set forth in § 311(a). Section 311(a) applies only to documents prepared under one or more of several sections of the MCARE Act, including § 308(a), upon which defendants rely. Thus, in order to rule in defendants’ favor, I must find that the Largent report comes within the provisions of § 308(a) and also meets the additional requirements of § 311.
I initially consider whether the Largent report is covered by § 308 which applies only to health care workers who reasonably believe that a serious event or incident has occurred. Nurse Largent did not testify that she prepared the report because she reasonably believed that this was a serious event or incident which mandated the preparation of a report.[2]
However, even assuming that Nurse Largent is characterized as a health care worker who reasonably *201 believed that a serious event or incident had occurred, § 308 also requires that the health care worker report the event or incident “according to the patient safety plan of the medical facility.” There is no evidence that Ms. Largent reported the incident “according to the patient safety plan of the medical facility.” In fact, there is no evidence of the existence of a patient safety plan.
Consequently, § 311(a) does not apply because the evidence does not support a finding that the Largent report comes under § 308(a).
However, even if I assume that the Largent report was prepared in compliance with § 308(a), defendants have not complied with the additional requirements of § 311. The first additional requirement is a provision within § 311(a) which protects reports prepared and created for the purpose of compliance with, inter alia, § 308(a) which “arise out of matters reviewed by the patient safety committee pursuant to section 310(b) or the governing board of a medical facility pursuant to section 310(b)...” Section 310(b) refers to the responsibilities of a patient safety committee to receive reports from the patient safety officer, evaluate investigations and actions of the patient safety officer, review and evaluate the quality of patient safety measures, make recommendations to eliminate future serious events, and to report to the administrative officer and governing body of the medical facility on a quarterly basis regarding the number of serious events and incidents and its recommendations to eliminate future serious events and incidents.
Nurse Largent was not a member of the patient safety committee. There is absolutely no evidence that the incident occurring on the evening of December 10, 2011 was ever considered by the patient safety committee. *202 Thus, even if the Largent report came within § 308(a), this report does not arise out of matters reviewed by the patient safety committee. Thus, the confidentiality provision of § 311 does not apply.
The second requirement which I consider is § 311 which applies only to reports “solely prepared or created for the purpose of compliance with [section 308(a)].” It would appear that the requirement that the report be “solely” prepared for § 308(a) was imposed to prevent a hospital from protecting from discovery reports that the hospital would have created without the protections of § 311(a). In this case, the behavior described in the report which the charge nurse prepared was so extreme that it is unlikely that the sole motivation of the charge nurse for creating the report would have been compliance with the requirements of the MCARE Act. At the time the nurse prepared her report, it was not known that the delay would harm the baby. In her testimony, Nurse Largent was never asked to explain whether compliance with the MCARE Act was her sole reason for preparing the report or whether at least one purpose was to have appropriate hospital officials learn of this incident and take appropriate steps.
On the basis of my ruling that the Largent report does not meet the requirements of either § 308(a) or § 311(a), I am compelling production of this report prepared by Nurse Largent.
In reaching this conclusion, I considered the comprehensive opinion of Judge Nealon in Venosh v. Hemes, 31 Pa. D. & C. 5th 411 (Lackawanna County, 2013). In that case, the court ruled that the incident reports, described by the hospital as event reports, were not protected by § 311(a) for at least two reasons. First, the record did not support a finding that the reports were *203 solely prepared or created for purposes of compliance with the MCARE Act; and second, the record did not show that the reports arose out of matters reviewed by the patient safety committee or board of trustees; to the contrary, there was no suggestion in the record that the patient’s care was ever reviewed by the patient safety committee or the board of trustees.
For these reasons, I enter the following order of court:
ORDER OF COURT
On this 4 day of May, 2015, it is hereby ordered that plaintiffs’ motion to compel production of the incident report is granted, and the report shall be furnished within twenty (20) days.

. Defendants are not contending that the report is protected from discovery by the Peer Review Protection Act or the Federal Patient Safety Quality Improvement Act of2005.

. Section 308(b) set forth at page 6 of this opinion, provides that the medical facility shall provide written notification to a patient affected by a serious event within seven days of the occurrence or discovery of a serious event. The medical facility never notified plaintiffs, which may suggest that the nurse’s report was not seen as a report of a serious event or incident governed by § 308(a).